# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

MONIQUE BORK,

    Petitioner

v.

DWIGHT NEVEN, et al.,

    Respondents.

Case No.: 2:16-cv-01235-APG-VCF

**Order**

Monique Bork, a Nevada prisoner, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. I deny Bork's habeas petition, deny her a certificate of appealability, and direct the Clerk of the Court to enter judgment accordingly.

## I.    BACKGROUND

Bork's convictions are the result of events that occurred in Clark County, Nevada on or about August 20, 2006. ECF No. 18-6 at 2.  Bork left her two-month old son, the victim in this case, in the care of her then boyfriend, Edward Thompson, Jr., who was under the influence of methamphetamine. ECF No. 18-7 at 8-9.  Thompson shook the victim causing irreversible injuries. *Id.*  Bork later admitted to not seeking immediate medical attention for the victim and to helping Thompson cover up the abuse. *Id.*  Due to the shaking, the victim was legally blind, had Cerebral Palsy, required nutrition through a Gastrostomy Tube, and suffered from numerous other medical problems. ECF No. 23 at 7.  The victim died as a result of his injuries in 2011. *Id.*

Bork was charged with murder and child abuse/neglect resulting in the substantial bodily harm of her son. ECF No. 18-6 at 2-3.  Bork pleaded guilty to child abuse/neglect resulting in substantial bodily harm in return for the murder charge being dismissed and for her testimony

against Thompson. ECF No. 18-7 at 3-4, 8; ECF No. 18-8.  Bork was sentenced to 96 to 240 months in the Nevada Department of Corrections. ECF No. 20-3 at 3.  Bork appealed, and the Nevada Supreme Court affirmed the judgment of conviction on January 22, 2015. ECF No. 20-14.  Remittitur issued on February 17, 2015. ECF No. 20-15.

Bork filed a state habeas corpus petition on May 5, 2015. ECF No. 20-17.  The state district court denied the petition on September 1, 2015. ECF No. 21-2.  Bork appealed, and the Nevada Court of Appeals affirmed on February 17, 2016. ECF No. 21-11.  Remittitur issued on March 14, 2016. ECF No. 21-12.

Bork dispatched her federal habeas corpus petition on or about May 23, 2016. ECF No. 1-1.  On February 28, 2017, Bork filed a counseled amended petition. ECF No. 17. The respondents moved to dismiss the petition on May 26, 2017. ECF No. 27.  I granted the motion in part and denied the motion in part. ECF No. 43 at 6.  Specifically, I dismissed Ground One, Part Three with prejudice as procedurally defaulted to the extent that Bork alleged that her plea was not voluntary, knowing, and intelligent due to prosecutorial misconduct; deferred consideration of whether Bork can demonstrate cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012), to overcome the procedural default of the remainder of Ground One, Part Three; and dismissed Ground Two, Part Two with prejudice as procedurally defaulted and abandoned. *Id.*  The respondents answered the remaining grounds in Bork's petition on May 8, 2018. ECF No. 50.  Bork replied on September 24, 2018. ECF No. 55.

In Bork's remaining grounds for relief, she alleges the following violations of her federal constitutional rights:

    1.    She entered a plea that was not voluntary, knowing, or intelligent:
        1.1    She was coerced to plea by her trial counsel and prosecutors.
        1.2    She did not understand the elements of the offense.

1.3    The ineffective assistance of her trial counsel made her plea
           unconstitutional.
2.    The prosecution engaged in prosecutorial misconduct by coercing her into
      pleading.
3.    She was denied the effective assistance of counsel:
      3.1    Her trial counsel failed to conduct necessary pre-trial litigation by
             failing to conduct a full preliminary hearing and failing to move to
             dismiss the child abuse charges based on a statute of limitations
             defense.
      3.2    Her trial counsel failed to investigate.
      3.3    Her trial counsel coerced her into pleading.
      3.4    Her trial counsel failed to object at sentencing.
4.    The state district court erred in allowing a non-victim to speak in the voice
      of the deceased child.
5.    Her sentence was cruel and unusual.
6.    The state district court judge highlighted the sentence she imposed on
      Bork on her Facebook page in support of her re-election.
7.    There were cumulative errors.

ECF No. 17.

## II.    STANDARD OF REVIEW

The standard of review generally applicable in habeas corpus cases under the

Antiterrorism and Effective Death Penalty Act ("AEDPA") is as follows:

An application for a writ of habeas corpus on behalf of a person in custody pursuant
to the judgment of a State court shall not be granted with respect to any claim that
was adjudicated on the merits in State court proceedings unless the adjudication of
the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application
    of, clearly established Federal law, as determined by the Supreme Court of the
    United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts
    in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court decision is contrary to clearly established Supreme Court

precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that

contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court

confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

## III. DISCUSSION

### A. Ground One

In Ground One, which includes three subparts, Bork asserts that her federal constitutional rights were violated because her plea was not voluntary, knowing, or intelligent. ECF No. 17 at

30.  The federal constitutional guarantee of due process of law requires that a guilty plea be knowing, intelligent, and voluntary. *See Brady v. United States*, 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *United States v. Delgado-Ramos*, 635 F.3d 1237, 1239 (9th Cir. 2011).  "The voluntariness of [a petitioner's] plea can be determined only by considering all of the relevant circumstances surrounding it." *Brady*, 397 U.S. at 749.  Addressing the "standard as to the voluntariness of guilty pleas," the Supreme Court has stated:

> (A) plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady*, 397 U.S. at 755 (quoting *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1957), *rev'd on other grounds*, 356 U.S. 26 (1958)); *see also North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (noting that the longstanding "test for determining the validity of guilty pleas" is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant"); *United States v. Doe*, 155 F.3d 1070, 1074 (9th Cir. 1998) ("A waiver is voluntary if, under the totality of the circumstances, [it] was the product of a free and deliberate choice rather than coercion or improper inducement.").  Although a plea may not be produced "by mental coercion overbearing the will of the defendant," a guilty plea made following "the post-indictment accumulation of evidence [that] convince[s] the defendant and his counsel that a trial is not worth the agony and expense to the defendant and his family" is not "improperly compelled." *Brady*, 397 U.S. at 750 (reasoning that "mental coercion" is only found if the defendant "did not or could not, with the help of counsel, rationally weigh the advantages of going to trial against the advantages of pleading guilty").  Accordingly, a guilty plea is not

5

rendered invalid when it has been "motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." *Id.* at 750.

In *Blackledge v. Allison*, the Supreme Court addressed the evidentiary weight of the record of a plea proceeding when the plea is subsequently subject to a collateral challenge. 431 U.S. 63 (1977). While noting that "the barrier of the plea . . . proceeding record . . . is not invariably insurmountable" when challenging the voluntariness of his plea, the Court stated that, nonetheless, the defendant's representations, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings" and that "[s]olemn declarations in open court carry a strong presumption of verity." *Id.* at 74; *see also Muth v. Fondren*, 676 F.3d 815, 821 (9th Cir. 2012) ("Petitioner's statements at the plea colloquy carry a strong presumption of truth."); *Little v. Crawford*, 449 F.3d 1075, 1081 (9th Cir. 2006).

In Bork's appeal of the denial of her state habeas petition, the Nevada Court of Appeals held:

> In her petition filed May 5, 2015, appellant Monique Bork claimed her guilty plea was not entered knowingly, intelligently, or voluntarily because the district court failed to properly canvass her on the elements of the crime and her appellate rights and because her plea was coerced.
>
> "To correct manifest injustice, the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea." NRS 176.165. "A manifest injustice occurs where a defendant makes a plea involuntarily or without knowledge of the consequences of the plea—or where the plea is entered without knowledge of the charge or that the sentence actually imposed could be imposed." *State v. James*, 500 N.W.2d 345, 348 (Wis. Ct. App. 1993) (internal quotation marks omitted). "[We] will not overturn the district court's determination on manifest injustice absent a clear showing of an abuse of discretion." *Rubio v. State*, 124 Nev. 1032, 1039, 194 P.3d 1224, 1229 (2008) (internal quotation marks omitted).
>
> The district court found Bork entered her plea freely, voluntarily, and knowingly and her claims to the contrary were belied by the record. The plea canvass

demonstrates Bork was fully apprised of her rights, she was not coerced or threatened, and she was informed her rights to appeal would be limited by pleading guilty. And, in her written plea agreement, Bork acknowledged her rights to appeal would be limited by pleaded [sic] guilty and she asserted she was not acting under duress or coercion.

The record supports the district court's findings and demonstrates Bork told the district court she read the information and understood the charge against her. We conclude the district court did not abuse its discretion in this regard. *See Molina v. State*, 120 Nev. 185, 190, 87 P.3d 533, 537 (2004) (petitioner bears the burden of proving her plea is invalid).

ECF No. 21-11 at 2-3.

### 1. Ground One, Part One

In Ground One, Part One, Bork asserts that her federal constitutional rights were violated when she was coerced to plead guilty by her trial counsel and the State. ECF No. 17 at 30. Bork elaborates that during a break in her police interview, her trial counsel and the State intimidated and scared her into cooperating and, as a result, later pleading guilty. *Id.* at 31.

On September 17, 2012, Bork conducted a proffer in the presence of the Chief Deputy District Attorney, a Deputy District Attorney, Bork's two trial counsel, and several law enforcement officers. ECF No. 20-17 at 98-99. At the time of the interview, Bork was seven months pregnant. *Id.* at 100. After explaining the events of the day that led her to take the victim to the hospital in August 2006, Bork explained that Thompson had admitted that he had hurt the victim but "didn't give [her] any indication as to how he was injured." *Id.* at 117. A short while later, a break was taken in the interview so that Bork could speak with her trial counsel. *Id.* at 123. Bork stated that she had not been "completely forthcoming" and had minimized some facts prior to the break in the interview because Thompson had manipulated her and scared her; however, her trial counsel advised her to "be more forthcoming." *Id.* at 128, 160. It was at this point that Bork explained that, approximately a year and a half after the victim sustained his

injuries, Thompson had told her that he was "com[ing] down from his drugs" and had shaken the victim out of anger while Bork was asleep. *Id.* at 129, 131, 146. Bork also admitted that she knowingly left the victim "in the care of somebody that [she] knew had been doing some heavy drugs." *Id.* at 134.

Bork alleges that during the break in the proffer interview, her trial counsel and the prosecutors intimated and scared her. ECF No. 17 at 31; *see also* ECF No. 20-17 at 8-9. This argument is belied by the record. Bork's plea agreement provided that she was "not acting under duress or coercion." ECF No. 18-8 at 6. And Bork told the state district court during her arraignment that her guilty "plea was freely and voluntarily given" and that no one made "any threats or promises to cause [her] to plead guilty." ECF No. 18-7 at 7. Moreover, Bork made two separate statements during the proffer that she had minimized information and not been completely forthcoming at the beginning of the interview because of Thompson—not due to any intimidation tactics by her trial counsel or the prosecutors. ECF No. 20-17 at 128, 160. Further, the only information that appears to have changed from the beginning of the interview to the post-break portion of the interview was Bork's statements about the amount of detail that Thompson gave her surrounding the victim's death. *See id.* at 117, 129, 131, 146. This fact supports Bork's interview statement that her trial counsel merely advised her to "be more forthcoming" in the interview, *id.* at 128, not Bork's current argument that her trial counsel intimidated her. Because there is no evidence that Bork was intimidated into cooperating with law enforcement, the Nevada Supreme Court reasonably concluded that Bork's plea was entered into freely, voluntarily, and knowingly. *See Brady*, 397 U.S. at 748; *see also Iaea v. Sunn*, 800 F.2d 861, 867 (9th Cir. 1986) ("Mere advice or strong urging by third parties to plead guilty based on the strength of the state's case does not constitute undue coercion.").

Bork is denied federal habeas relief for Ground One, Part One.

### 2. Ground One, Part Two

In Ground One, Part Two, Bork asserts that her federal constitutional rights were violated because she did not understand the elements of the offense, so her plea was not knowing, intelligent, or voluntary. ECF No. 17 at 32. Bork elaborates that the state district court asked her only if she understood the charge against her, not whether she understood the elements. ECF No. 55 at 23.

The Supreme Court has held that a guilty plea "would be invalid if [the defendant] had not been aware of the nature of the charges against him, including the elements of the . . . charge to which he pleaded guilty." *Bradshaw v. Stumpf*, 545 U.S. 175, 182-83 (2005); *see also Henderson v. Morgan*, 426 U.S. 637, 645 (1976) (explaining that a "plea could not be voluntary in the sense that it constituted an intelligent admission that [the defendant] committed the offense unless the defendant received 'real notice of the true nature of the charge against him'" (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)); *McCarthy v. United States*, 394 U.S. 459, 466 (1969) ("[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts."). However, the Supreme Court has "never held that the judge must himself explain the elements of each charge to the defendant on the record." *Bradshaw*, 545 U.S. at 183. Instead, "the constitutional prerequisite of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel." *Id.* These constitutional prerequisites were met in this case.

During the state district court's canvass at Bork's arraignment, Bork answered in the affirmative when asked if she read the information, which charged her "with a crime of child abuse and neglect with substantial bodily harm," and understood the charges against her. ECF No. 18-7 at 5. Bork later stated that she read the plea agreement and discussed it with her trial counsel. *Id.* at 5-6. Further, Bork's plea agreement provided that she "discussed the elements of all of the original charge(s) . . . with [her] attorney and . . . underst[oo]d the nature of the charge(s) against [her]." ECF No. 18-8 at 5. Because the record demonstrates that Bork's trial counsel explained the nature and elements of the charge to Bork and the state district court also discussed the nature of the charge with Bork during the arraignment, the Nevada Court of Appeals reasonably concluded that Bork's plea was entered into freely, voluntarily, and knowingly. *Brady*, 397 U.S. at 748.

Bork is denied federal habeas relief for Ground One, Part Two.[1]

### B.      Ground Two[2]

In Ground Two, Bork alleges that her federal constitutional rights were violated when the State engaged in prosecutorial misconduct. ECF No. 17 at 36. Specifically, Bork alleges that the State coerced her into pleading guilty by telling her during the break in the proffer interview that it would go after her on the murder charge if she did not give the statement that it wanted. *Id.* at 36-37. As was explained in Ground One, Part One, the Nevada Court of Appeals held that the district court did not abuse its discretion in finding that Bork's plea was not coerced. ECF No. 21-11 at 3. And as was discussed in Ground One, Part One, there was no evidence that Bork was

---

[1] Because Ground One, Part Three is essentially an ineffective assistance of counsel claim, I will discuss it with Bork's other ineffective assistance of counsel claims.

[2] I previously dismissed Ground Two, Part Two with prejudice as procedurally defaulted and abandoned. ECF No. 43 at 6.

intimidated into cooperating or pleading guilty.  In fact, there is no evidence supporting Bork's

contention that the State made threats to her.  Therefore, as the Nevada Court of Appeals

reasonably held, Bork fails to show coercion on the part of the State demonstrating prosecutorial

misconduct. *See generally Berger v. United States*, 295 U.S. 78, 88 (1935) ("It is as much [a

prosecutor's] duty to refrain from improper methods calculated to produce a wrongful conviction

as it is to use every legitimate means to bring about a just one.").  Bork is denied federal habeas

corpus relief for Ground Two.

## C.     Ground Three

In Ground Three, Bork alleges four instances of ineffective assistance of her trial counsel.

In *Strickland*, the Supreme Court propounded a two-prong test to analyze claims of ineffective

assistance of counsel, requiring the petitioner to demonstrate (1) that the attorney's

"representation fell below an objective standard of reasonableness," and (2) that the attorney's

deficient performance prejudiced the defendant such that "there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).  A court considering a claim of

ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance." *Id.* at 689.  The petitioner's burden

is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed the defendant by the Sixth Amendment." *Id.* at 687.  Additionally, to establish

prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had

some conceivable effect on the outcome of the proceeding." *Id.* at 693.  Rather, the errors must

be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at

687.  When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, as

is the case here, the *Strickland* prejudice prong requires the petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104–05. In *Harrington*, the United States Supreme Court instructed:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," [*Strickland*, 466 U.S. at 689]; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles* [*v. Mirzayance*, 556 U.S. 111, 123 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonably argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential.").

### 1.      Ground Three, Part One

In Ground Three, Part One, Bork alleges that her trial counsel failed to conduct necessary pre-trial litigation. ECF No. 17 at 41. Specifically, Bork alleges that her trial counsel failed to conduct a preliminary hearing before allowing her to plead guilty and failed to move for dismissal of the child abuse charge based on a statute of limitations defense. *Id.* at 41-42.

I will first address Bork's argument that her trial counsel failed to conduct a preliminary hearing. Regarding this assertion, the Nevada Court of Appeals held:

> Bork claimed counsel was ineffective for denying her right to proceed with the preliminary hearing before agreeing to enter a guilty plea. The district court found Bork voluntarily waived her right to a preliminary hearing; she and counsel were able to negotiate the dismissal of a murder charge by agreeing to plead guilty before concluding the preliminary hearing; and, given the favorable negotiation, she cannot show counsel was ineffective or she would have insisted on going to trial.
>
> The record demonstrates the district court's factual findings are supported by substantial evidence and are not clearly wrong, and we conclude Bork failed to demonstrate she was prejudiced by counsel's representation. *See Means v. State*, 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004) (petitioner bears the burden of proving ineffective assistance).

ECF No. 21-11 at 5-6.

Bork was originally charged with murder and child abuse/neglect resulting in substantial bodily harm. ECF No. 18-6 at 2-3. A preliminary hearing was held on August 31, 2012 for Bork and her co-defendant Thompson regarding those charges. ECF No. 18-5 at 2. Dr. Neha Mehta was the first witness called to testify. *Id.* Dr. Mehta testified that the victim's injuries were caused solely by trauma and that the victim had been physical abused. *Id.* at 11-12. Dr. Timothy Dutra, the medical examiner at the Clark County Office of the Coroner, testified that he conducted an autopsy of the victim. ECF No. 18-5 at 25. Dr. Dutra found the victim's injuries to be "consistent with a severe remote injury; in other words, an injury that happened many years ago." *Id.* Dr. Dutra explained that the victim's "brain itself weighed about a third to a quarter of what it should in a child of that age," that "there had been massive atrophy of the [victim's] brain tissues," and that "the amount of reactive edema of [the victim's] brain" indicated that he suffered blunt force trauma. *Id.* at 27. Dr. Dutra also explained that the victim's cause of death was "nonaccidental head trauma" and that the manner of death was homicide. *Id.* at 27-28.

Cortney Campbell, who was a good friend of Bork's and drove Bork and the victim to the hospital on August 21, 2006, testified that she was concerned about the victim's exposure to

illegal drug use in the house prior to him sustaining his injuries. ECF No. 18-5 at 36, 40. Campbell testified about her involvement in the events of the evening of the August 21, 2006, and then testified about interactions she had with Bork and Thompson in the following days and years. Campbell explained that approximately two weeks after the victim sustained his injuries, Bork and Thompson got married. *Id.* at 48. Following the marriage ceremony, Campbell heard Bork and Thompson say, "now we cannot testify against each other." *Id.* Bork later clarified this statement to mean that law enforcement would not "be able to pinpoint a single person [as the perpetrator] and with [Bork and Thompson] being married[,] they wouldn't have to testify against each other." *Id.* at 49.

Later, in 2007, Campbell asked Bork what happened to the victim. *Id.* at 50. Bork became very emotional and "told [Campbell] that someone that she knew in fact was the person who hurt the baby" by shaking him. *Id.* at 50-51. "At one point [Bork] said she was there [when the shaking occurred]. At another point she said she was not there." *Id.* at 51. Bork had originally told Campbell that she was at work the morning of August 21, 2006, but in 2007, Bork told Campbell that she was not at work and "[t]hat the injury [to the victim] that she described to [Campbell] took place in the morning when she was" present. *Id.* at 52. Bork also told Campbell that the victim's behavior the morning of August 21, 2006, made her "aware that [the] victim had a problem at that point" even though he was not taken to the hospital until that evening. *Id.* Finally, Bork told Campbell that there was a discussion between Bork and two other persons on the day of the victim's injuries about a "cover-up scenario" that entailed Bork and the other two persons sticking together so that the police "would not be able to pinpoint who was involved." *Id.* at 53.

Lisa Peele, a former Las Vegas Metropolitan Police Department Officer, testified at the preliminary hearing that she interviewed Bork in the hospital on August 22, 2006. ECF No. 18-5 at 67. Among other things, Bork told Officer Peele that she waited an hour to take the victim to the hospital after noticing that his tongue was sticking to the roof of his mouth. *Id.* at 70. Following the conclusion of Officer Peele's testimony, the preliminary hearing was continued to another day for the presentation of two additional witnesses. *See id.* at 74. However, before the continued hearing could take place, Bork conducted a proffer with the State on September 17, 2012, and pleaded guilty on September 26, 2012. ECF No. 20-17 at 98-99; ECF No. 18-7 at 7. Thereafter, on October 5, 2012, the preliminary hearing continued against Thompson, and Bork testified as a witness for the State. ECF No. 19 at 2.

Bork contends that if she had not been ineffectively advised to plead guilty before the remainder of the preliminary hearing could be conducted, there was little chance that the state justice court would have bound over her murder or child abuse charges to the state district court. ECF No. 17 at 43. This argument lacks merit. "[T]o establish probable cause to bind a defendant over for trial, the state must show that (1) a crime has been committed [known as the corpus delicti] and (2) there is probable cause to believe the defendant committed it." *Sheriff v. Middleton*, 112 Nev. 956, 961, 921 P.2d 282, 285 (1996). During "the preliminary hearing stage, probable cause to bind a defendant over for trial 'may be based on "slight," even "marginal" evidence because it does not involve a determination of guilt or innocence of an accused.'" *Id.*, 921 P.2d at 286. "[T]he state's burden with respect to the corpus delicti is the same as its burden to show probable cause[: t]he state must present evidence supporting a 'reasonable inference' of death by criminal agency." *Id.* at 962, 921 P.2d at 286.

Dr. Mehta testified that the victim's injuries on August 21, 2006, were consistent with physical abuse, and Dr. Dutra testified that the victim died in 2011 from his earlier, severe injuries and that the manner of his death was homicide. ECF No. 18-5 at 11-12, 25, 27-28. Campbell then testified that Bork allowed the victim to be exposed to illegal drug use; Bork and Thompson talked about being unable to testify against one another due to their marriage approximately two weeks after the victim's injuries were sustained; Bork knew that the victim was injured due to having been shaken; Bork was present with the injuries occurred; Bork did not take the victim to the hospital until the evening of August 21, 2006, even though she was aware that he was having issues earlier in the day; and Bork and her accomplices conspired to "cover-up" the crime. *Id.* at 40, 48, 50-53. This evidence is sufficient to show that there was probable cause that the victim had been abused and murdered and that Bork either committed the crimes, conspired with another to commit the crimes, or aided and abetted another to commit the crimes. *Middleton*, 112 Nev. at 961-62, 921 P.2d at 285-86.

Moreover, because Bork pleaded guilty to child abuse/neglect resulting in substantial bodily harm, her murder charge was dismissed. ECF No. 18-7 at 3-4, 8; ECF No. 18-8. Even if the preliminary hearing testimony was not yet complete at the time Bork pleaded guilty, the testimony that was presented was damaging for Bork and was sufficient for Bork's trial counsel to assess Bork's risk of being convicted of murder if she went to trial. *Cf. Premo v. Moore*, 562 U.S. 115, 124 (2011) ("In the case of an early plea, neither the prosecution nor the defense may know with much certainty what course the case may take. It follows that each side, of necessity, risks consequences that may arise from contingencies or circumstances yet unperceived. The absence of a developed or an extensive record and the circumstances that neither the prosecution nor the defense case has been well defined create a particular risk that an after-the-fact

assessment will run counter to the deference that must be accorded counsel's judgment and perspective when the plea was negotiated, offered, and entered.").  Because there was probable cause to bind Bork over for trial and sufficient evidence for Bork's trial counsel to weigh the risks of going to trial versus seeking a plea deal, the Nevada Court of Appeals reasonably concluded that Bork failed to demonstrate deficiency or prejudice regarding her trial counsel advice to seek a plea deal before the conclusion of the preliminary hearing. *Strickland*, 466 U.S. at 688, 694; *see also Premo*, 562 U.S. at 124 ("The opportunities [of an early plea] include pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome not only at trial but also from a later plea if the case grows stronger and prosecutors find stiffened resolve.").

Turning to Bork's second argument—that her trial counsel failed to move for dismissal of the child abuse charges based on the statute of limitations—the Nevada Court of Appeals held:

> Bork claimed counsel was ineffective for failing to move to dismiss the child-abuse-and-neglect charge based on the statute of limitations.  The district court found Bork could not show counsel acted unreasonably or she was prejudiced because the statutes of limitation provide an affirmative defense, the information alleged she lied to medical professionals about the nature of the victim's injuries, and the State would have been able to present evidence she committed the offense in a secretive manner that tolled the statute of limitations.

ECF No. 21-11 at 5.

Nev. Rev. Stat. § 171.085 provides that "an indictment for . . . [a]ny felony other than the felonies listed [previously] must be found, or an information or complaint filed, within 3 years after the commission of the offense."  However, Nev. Rev. Stat. § 171.095(1)(a) provides that "[i]f a felony . . . is committed in a secret manner, an indictment for the offense must be found, or an information or complaint filed, within the periods of limitation prescribed in NRS 171.085 . . . after the discovery of the offense."

The victim's injuries were sustained "on or about" August 20, 2006, and the criminal complaint was filed against Bork on July 28, 2012. ECF No. 18-4 at 2. Although the criminal information was not filed "within 3 years after the commission of the offense," Nev. Rev. Stat. § 171.085, the Nevada Court of Appeals reasonably concluded that the State would have been able to present evidence that Bork committed the offense in a secret manner, thereby tolling the statute of limitations. *See Dozier v. State*, 124 Nev. 125, 128, 178 P.3d 149, 152 (2008) ("NRS 171.095 provides for the tolling of the statute of limitations when certain felonies . . . are committed in such a way that prevents or delays discovery."); *see also Walstrom v. State*, 104 Nev. 51, 56, 752 P.2d 225, 228 (1988) ("We conclude that a crime is done in a secret manner, under NRS 171.095, when it is committed in a deliberately surreptitious manner that is intended to and does keep all but those committing the crime unaware that an offense has been committed."), *overruled on other grounds by Hubbard v. State*, 112 Nev. 946, 948, 902 P.2d 991, 992 (1996). Indeed, Campbell provided testimony at the preliminary hearing that Bork and Thompson got married shortly after the offense to avoid having to testify against each other; that even though Bork knew how the victim's injuries occurred, she did not tell law enforcement or any medical staff; and that Bork conspired to "cover-up" the victim's injuries. ECF No. 18-5 at 48-53. Because the statute of limitations was tolled, it would have been fruitless for Bork's trial counsel to have moved for the dismissal of the child abuse charges based on Nev. Rev. Stat. § 171.085. Accordingly, the Nevada Court of Appeals reasonably concluded that Bork failed to demonstrate that her trial counsel acted deficiently or that she was prejudiced. *Strickland*, 466 U.S. at 688, 694.

Bork is denied federal habeas relief for Ground Three, Part One.

////

## 2.    Ground Three, Part Two

In Ground Three, Part Two, Bork alleges that her federal constitutional rights were violated when her trial counsel failed to properly investigate her case. ECF No. 17 at 44. Specifically, Bork argues that her counsel should have investigated the medical evidence in order to corroborate her explanation that she took the victim to the hospital as soon as she noticed he was having problems. *Id.* at 46. Bork also alleges that her trial counsel should have investigated whether she could have told the doctors anything further that would have affected the victim's treatment. *Id.* In Bork's appeal of the denial of her state habeas petition, the Nevada Court of Appeals held:

> Bork claimed counsel was ineffective for failing to adequately review and investigate her case prior to the entry of the plea. She specifically claimed counsel should have consulted with medical experts to determine whether an earlier medical intervention would have changed the outcome. The district court found Bork failed to establish that any information obtained through such a consultation would have been helpful to her case or would have caused her to insist on going to trial.

ECF No. 21-11 at 4.

Bork alleges this further investigation that should have been conducted by her trial counsel would have rebutted the State's contention that Bork "failed to obtain medical treatment or care to save [the victim's] life until irreversible brain damage had been done, thereafter lying to medical and law enforcement personnel about the nature and time of occurrence of [the victim's] injury." ECF No. 18-4 at 3. However, as the Nevada Court of Appeals reasonably concluded, Bork fails to demonstrate that this further investigation would have caused her to have insisted on going to trial. *Hill*, 474 U.S. at 59. In fact, information relating to these investigation questions was elicited during the preliminary hearing, and Bork still chose to plead guilty thereafter. *See* ECF No. 18-5 at 14 (during cross-examination, Bork's trial counsel

questioned Dr. Mehta about the timing of the victim's injuries, and Dr. Mehta answered in the affirmative when asked if "the swelling of the brain appeared to be fairy contemporaneous to the injuring event"); at 16 (during cross-examination by Thompson's trial counsel, Dr. Mehta was asked about the knowledge of the basis of the victim's injuries, in which she testified that "[a]s soon as the child presented to the emergency department, immediately at triage the nurse realized something was wrong, the physician realized something was wrong").  Thus, Bork is denied federal habeas corpus relief for Ground Three, Part Two.

### 3.    Ground Three, Part Three

In Ground Three, Part Three, Bork alleges that her federal constitutional rights were violated when her trial counsel coerced her into pleading guilty. ECF No. 17 at 47.  As explained in Ground One, Part One, the Nevada Court of Appeals held that the district court did not abuse its discretion in finding that Bork's plea was not coerced. ECF No. 21-11 at 3.  In the same order, the Nevada Court of Appeals held, generally, that "[t]he record demonstrate the district court's factual findings are supported by substantial evidence and are not clearly wrong, and we conclude Bork failed to demonstrate she was prejudiced by counsel's representation. *See Means v. State*, 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004)." *Id.* at 5-6.  As discussed in Ground One, Part One, there was no evidence that Bork was intimidated into cooperating with law enforcement by her trial counsel.  Therefore, as the Nevada Court of Appeals reasonably held, Bork fails to demonstrate that her trial counsel were deficient or that she was prejudiced. *Strickland*, 466 U.S. at 688, 694.  Bork is denied federal habeas corpus relief for Ground Three, Part Three.

### 4.    Ground One, Part Three[3]

In Ground One, Part Three, Bork asserts that the ineffective assistance of her trial counsel made her plea unconstitutional.[4] ECF No. 17 at 34. Bork elaborates that her trial counsel failed to realize and advise her that her statement did not amount to the crime charged and that the crime was well beyond the statute of limitations. ECF No. 55 at 19, 21.

Bork previously conceded that this ground was unexhausted. ECF No. 17 at 36. However, in her response to the respondents' motion to dismiss, she contended that this ground is technically exhausted but procedural defaulted because it would be procedurally barred in the state courts, and "she cannot overcome the default in state court." ECF No. 37 at 3. Bork also contended that she can demonstrate cause and prejudice because she had no post-conviction counsel. *Id.* I previously deferred consideration of whether Bork can demonstrate cause and prejudice, under *Martinez v. Ryan*, 566 U.S. 1 (2012), to overcome the procedural default. ECF No. 43 at 6.

In *Martinez*, the Supreme Court ruled that "when a State requires a prisoner to raise an ineffective-assistance-of-trial counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim" if "the state courts did not appoint counsel in the initial-review collateral proceeding" or "where appointed counsel in the initial-review collateral proceeding . . . was ineffective." 566 U.S. at 14. "To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a

---

[3] Because Ground One, Part Three is essentially an ineffective assistance of counsel claim, I discuss it here.

[4] I previously dismissed the following portion of Ground One, Part Three with prejudice as procedurally defaulted: allegations that Bork's plea was not voluntary, knowing, and intelligent due to alleged prosecutorial misconduct. ECF No. 43 at 6.

substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.*

Although Bork's testimony at the proffer interview, Thompson's preliminary hearing, and Thompson's trial may not have established that she committed a crime, Bork acknowledged additional, incriminating facts at her arraignment:

> [B]eyond having knowledge of leaving the child in the care of somebody that was under the influence of methamphetamine, specifically, and knowing that that once she became aware and did not seek medical attention that thereafter she did learn of what had taken place with the child and failed to provide that information to the police. That specifically that Edward Thompson had confessed to her that he had shaken the child . . . to such a degree that the child stopped crying and then suffered irreversible injury thereafter. That she failed to go to the police and talk to the police about that or tell the medical providers any of that information, and also worked with him to cover up this crime thereafter.

ECF No. 18-7 at 8-9. Because Bork's trial counsel had knowledge of these facts following Campbell's testimony at Bork's preliminary hearing and because these facts demonstrate that Bork did commit a crime, it cannot be concluded that her trial counsel was deficient for allegedly not advising her that her non-self-incriminating testimony presented against Thompson did not amount to a crime. *Strickland*, 466 U.S. at 688. Further, I have already determined that the facts of Bork's crime would have tolled the statute of limitations, such that Bork's trial counsel was not ineffective for not advising Bork about this possible defense or moving to dismiss the charge on this basis. *Id.* Because these ineffective-assistance-of-trial-counsel arguments fail, Ground One, Part Three is not substantial. Therefore, Ground One, Part Three is denied as being procedurally defaulted. *See Martinez*, 566 U.S. at 14.

**D.    Ground Four and Ground Three, Part Four**

In Ground Four, Bork asserts that her federal constitutional rights were violated when the state district court allowed a non-victim to speak in the voice of the deceased child about

impalpable, inadmissible evidence at Bork's sentencing. In her appeal of her judgment of conviction, the Nevada Supreme Court held:

> [A]ppellant Monique Karien Bork contends that the district court committed plain error at sentencing by allowing improper victim impact testimony. *See* NRS 176.015(3). Bork claims that the district court erred "by allowing a non-victim to speak in the first person voice of the deceased child." Notably, Bork did not object at the time of sentencing. Although we agree that the district court erred by allowing the witness in question to testify, we conclude that Bork fails to demonstrate prejudice affecting her substantial rights. *See Gallego v. State*, 117 Nev. 348, 365, 23 P.3d 227, 239 (2001). [Footnote 1: Bork also notes that she was not provided with notice that the witness would testify. Bork is not entitled to relief on this basis. *See* NRS 176.015(4) ("Any defect in notice . . . [is] not grounds for appeal.").]
>
> "'[J]udges spend much of their professional lives separating the wheat from the chaff and have extensive experience in sentencing,' along with the legal training necessary to determine an appropriate sentence.'" *Randell v. State*, 109 Nev. 5, 7-8, 846 P.2d 278, 280 (1993) (quoting *People v. Mockel*, 276 Cal. Rptr. 559, 563 (Ct. App. 1990)). Here, the brief statement by the challenged witness merely thanked the victim's grandmother and adoptive parents for the care they provided, did not specifically address the defendant or the crime, and did not make a sentencing recommendation. The district court also heard from the victim's adoptive parents, *see* NRS 176.015(3), (5)(d)(3), who both asked the district court to impose the maximum sentence after providing details about the victim's life after his severe brain injury and his extensive medical history preceding his death. The State, as well, argued for the maximum sentence and the district court imposed the maximum prison term of 96-240 months. [Footnote 2: The Division of Parole and Probation recommended a prison term of 53-240 months.] Bork fails to demonstrate that the challenged statement unduly influenced the district court, and we conclude that the district court did not commit plain error entitling her to a new sentencing hearing. *See Dieudonne v. State*, 127 Nev. ___, ___, 245 P.3d 1202, 1204-05 (2011) (reviewing the failure to object to victim impact statements for plain error). [Footnote 3: Additionally, according to documents provided by Bork on appeal, at the hearing on her motion for resentencing, the district court, who also presided over the codefendant's trial, stated that in sentencing Bork, it considered "everything that was presented to me in the course of this case," and that "[a]s far as that one speaker, quite frankly it would have been pretty nominal, the impact, given the breadth of information that was provided to me before sentencing."].

ECF No. 20-14 at 2-3. This ruling was reasonable.

At Bork's sentencing hearing, Andrea Legro, an unidentified person, read the following letter:

I had always looked forward to the day when I would be old enough to tell you what was in my heart. I thought I lost that chance, but today is my day.

I was so little at birth and required lots of extra attention. Thank you for taking me to the doctor when I knew you had other things to do. I never meant to cause you any trouble. My injuries were so severe that I couldn't help but cry, sometimes the whole night long. It hurt so bad. I never meant to exhaust you. No matter what you did I was inconsolable. I'm very sorry about that. But I looked forward to the day I could play with my brothers and sisters, but I won't ever get the chance to do that now. I will always remember them, but could you please make sure that they remember me?

When my world was dark and scary, you held me. You kept me safe and warm and showed me unconditional love. You made my little life worth living. So thank you grandma Ursula, mommie Tish, and mommie Gayle for loving me just the way I was. Hugs and Kisses, love you always, Brayden.

ECF No. 20-1 at 5-6. Later, at the hearing on Bork's motion for resentencing, Bork's trial counsel explained that he "did not object" to Legro's testimony because "[t]he notice had been given to [him] about a year before and the speakers were fairly quick as far as what she said and [he] didn't catch that until after she had . . . finished." ECF No. 20-6 at 4. At that same hearing, the state district court indicated that "[a]s far as that one speaker, [Legro,] quite frankly it would have been pretty nominal, the impact, given the breadth of information that was provided to me before sentencing." *Id.*

"Victim impact evidence is simply [a] form or method of informing the sentencing authority about the specific harm caused by the crime in question, evidence of a general type long considered by sentencing authorities." *Payne v. Tennessee*, 501 U.S. 808, 825 (1991). Bork asserts that Legro's testimony was inappropriate because it is not apparent that she was a victim and her letter written from the point of view of the victim was inappropriate. Nevada law affords a "victim an opportunity to . . . [r]easonably express any views concerning the crime, the person responsible, the impact of the crime on the victim and the need for restitution." Nev. Rev. Stat.

§ 176.015(3)(b).  However, a victim is limited to a person or a relative of a person "against whom a crime has been committed" or "who has been injured or killed as direct result of the commission of a crime." Nev. Rev. Stat. § 176.015(5)(d).  It is not apparent that Legro fits within the definition of a victim, so the Nevada Supreme Court reasonably concluded that the state district court erred by allowing her testimony.  However, the Nevada Supreme Court also reasonably concluded that relief was not warranted.  Legro's statement was relatively brief and did not address Bork or the crime. *See* ECF No. 20-1 at 6. And importantly, the state district court indicated that the impact of Legro's statement was "pretty nominal." ECF No. 20-6 at 4. Accordingly, as the Nevada Supreme Court reasonably determined, Bork fails to demonstrate that the state district court was unduly influenced by the improper testimony. *See Rhoades v. Henry*, 638 F.3d 1027, 1055 (9th Cir. 2011) ("We assume that the trial judge applied the law . . . and considered only evidence that he knew was admissible."); *Smith v. Stewart*, 140 F.3d 1263, 1272 (9th Cir. 1998) (explaining that judges "can separate the wheat from the chaff"). Bork is denied federal habeas relief for Ground Four.

Turning to Ground Three, Part Four, Bork asserts that her federal constitutional rights were violated when her trial counsel failed to object to Legro's victim impact testimony at her sentencing hearing. ECF No. 17 at 48.  In Bork's appeal of the denial of her state habeas petition, the Nevada Court of Appeals held:

> Bork claimed counsel was ineffective for failing to object at sentencing to a non-victim impact statement when the speaker was "looking directly at petitioner, putting on a theatrical performance, [and] verbally abusing petitioner."  The district court found Bork failed to identify any legal basis for an objection, the Nevada Supreme Court determined the error in admitting the non-victim speaker's testimony did not result in prejudice, and Bork cannot establish prejudice.

ECF No. 21-11 at 4. This ruling was reasonable.

Even if Bork's trial counsel was deficient—he appears to admit his deficiency at the hearing on the motion for resentencing, *see* ECF No. 20-6 at 4—Bork cannot establish prejudice. *Strickland*, 466 U.S. at 694. The trial judge explained that it presided over the "companion trial" of Thompson and "had the opportunity to hear from all the witnesses that were involved in this case." ECF No. 20-6 at 4. The judge then explained that "everything that was presented to [it] in the course of this case was considered." *Id.* Thus, even if Bork's trial counsel had objected to Legro's testimony, which was very brief, Bork fails to demonstrate that the result of her sentencing would have been different due to the vast amount of other information that was considered by the state district court in regards to Bork's sentence. *Strickland*, 466 U.S. at 694; *see also Djerf v. Ryan*, 931 F.3d 870, 881 (9th Cir. 2019) ("Strickland prejudice is not established by mere speculation."). Bork is denied federal habeas relief for Ground Three, Part Four.

**E. Ground Five**

In Ground Five, Bork argues that her sentence was cruel and unusual in violation of the federal constitutional because she lacked culpability and provided extensive testimony against Thompson. ECF No. 17 at 51-52. In her appeal of her judgment of conviction, the Nevada Supreme Court held:

> Bork contends that the district court abused its discretion by imposing an excessive and disproportionate sentence constituting cruel and unusual punishment. We disagree. This court will not disturb a district court's sentencing determination absent an abuse of discretion. *Parrish v. State*, 116 Nev. 982, 989, 12 P.3d 953, 957 (2000). Bork fails to demonstrate that the district court relied solely on impalpable or highly suspect evidence or allege that the sentencing statutes are unconstitutional. *See Chavez v. State*, 125 Nev. 328, 347-48, 213 P.3d 476, 489-90 (2009). Bork's prison term of 96-240 months falls within the parameters provided by the relevant statute, *see* NRS 200.508(1)(a)(2), and the sentence imposed is not so unreasonably disproportionate to the gravity of the offense as to shock the conscience, *see Culverson v. State*, 95 Nev. 433, 435, 596 P.2d 220, 221-22 (1979);

*see also Harmelin v. Michigan*, 501 U.S. 957, 1000-01 (1991) (plurality opinion). We conclude that the district court did not abuse its discretion at sentencing.

ECF No. 20-14 at 3-4.

The Eight Amendment provides that "cruel and unusual punishments [shall not be] inflicted." U.S. Const. amend. VIII. "[B]arbaric punishments" and "sentences that are disproportionate to the crime" are cruel and unusual punishments. *Solem v. Helm*, 463 U.S. 277, 284 (1983) (concluding that a habitual offender's sentence for a seventh nonviolent felony for life without the possibility of parole is disproportionate). The Eighth Amendment does not, however, mandate strict proportionality between the defendant's sentence and the crime. *See Ewing v. California*, 538 U.S. 11, 23 (2003). Rather, "only extreme sentences that are 'grossly disproportionate' to the crime" are forbidden. *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991). "In assessing the compliance of a non-capital sentence with the proportionality principle, [the Court] consider[s] 'objective factors'" such as "the severity of the penalty imposed and the gravity of the offense." *Taylor v. Lewis*, 460 F.3d 1093, 1098 (9th Cir. 2006). "[S]uccessful challenges based on proportionality are 'exceedingly rare,' and deference is due legislative judgments on such matters." *Id.* (citing *Solem*, 463 U.S. at 289-90).

The state district court sentenced Bork to 8 to 20 years without explanation. ECF No. 20-2 at 9. Bork later moved for resentencing, *see* ECF No. 20-4, and during a hearing on that motion, the sentencing judge elaborated on the factors it considered in sentencing Bork:

> In this particular case I have a lot more - - I had a lot more information than I have in most cases when I sentence someone. Obviously, I had the sentencing memorandum that was provided by the defense and I had the speakers that came at the time of sentencing. So as to the speakers at the time of sentencing, that was basically the second time I had heard from those speakers.

> As you're well aware there was a companion trial that preceded Ms. Bork's sentencing and I had already heard from those speakers at length during the course of the trial. Additionally, I had the opportunity to hear from all the witnesses that

were involved in the case. Additionally, I had the chance to listen to Ms. Bork speak on examination and cross examination for over two days during the course of the trial. So, everything that was presented to me in the course of this case was considered by me.

ECF No. 20-6 at 4.

Bork was adjudged guilty under Nevada Revised Statutes § 200.508, which provided a sentence of 2 to 20 years for the crime of abuse, neglect, or endangerment of a child resulting in substantial bodily harm. Bork's sentence of 8 to 20 years was, therefore, the harshest punishment allowed by that statute. *See* Nev. Rev. Stat. § 193.130(1) ("The minimum term of imprisonment that may be imposed must not exceed 40 percent of the maximum term imposed."). However, it cannot be concluded that Bork's sentence was "'grossly disproportionate' to the crime." *Harmelin*, 501 U.S. at 1001.

It is noted that Bork's psychiatric evaluation, performed by Norton A. Roitman, MD, DFAPA, was favorable. *See* ECF No. 19-4 at 11-19. In fact, Dr. Roitman reported that Bork was "caught up in [a] cycle of victimization, abuse, neglect, shame, and misshapen priorities," but she "is willing to do anything to improve." *Id.* at 19. Dr. Roitman concluded that Bork "has no mental illness that predicts further neglect or abuse, and there is no reason to be concerned about any dangerousness to her children or anyone." *Id.* at 19. However, this evaluation must be considered in combination with the facts of the case.

At her arraignment, Bork acknowledged that she left her son, the victim, "in the care of somebody that was under the influence of methamphetamine," that she did not seek immediate medical attention after learning that the victim had been injured, that she failed to inform law enforcement or medical personnel that Thompson confessed to her that he had shaken the victim, and that she assisted Thompson in covering up the abuse. ECF No. 18-7 at 8-9. Due to this abuse, the victim was left "legally blind, with an extremely poor prognosis for survival and

development, to include 'no hope for any higher functions.'" ECF No. 23 at 7. The victim also "suffered from numerous medical problems to include Cerebral Palsy and received nutrition through a Gastrostomy Tube" throughout the remainder of his life before he died as a result of his injuries on July 10, 2012. *Id.* These facts demonstrate that the gravity of Bork's offense was severe: Bork did not protect her son and failed to get him immediate medical treatment, and as a result, her son suffered life-altering and life-ending injuries. Because the gravity of Bork's offense was severe, her sentence does not violate the Eight Amendment. *Taylor*, 460 F.3d at 1098; *cf. Ramirez v. Castro*, 365 F.3d 755, 756-57 (9th Cir. 2004) (finding a sentence of 25 years to life was grossly disproportionate to three shoplifting offenses). It is also worth noting that Bork is eligible for parole after serving eight years. *See Rummel v. Estelle*, 445 U.S. 263, (1980) ("[B]ecause parole is 'an established variation on imprisonment of convicted criminals,' . . . a proper assessment of [a state's] treatment of [a habeas petitioner] could hardly ignore the possibility that he will not actually be imprisoned for the rest of his life.").

Bork is denied federal habeas relief for Ground Five.

### F.     Ground Six

In Ground Six, Bork argues that her federal constitutional rights were violated when the state district court judge used publicity about her case for campaign purposes. ECF No. 17 at 56. Specifically, Bork explains that the judge posted a link on her Facebook page to an article highlighting Bork's sentence while the judge was seeking reelection to the bench. *Id.* In Bork's appeal of her judgment of conviction, the Nevada Supreme Court held:

> Bork contends that the district court violated her right to due process and a fair tribunal by using "publicity about this case for campaign purposes." Bork takes issues with the district court judge posting a link of her Facebook page to an article about the sentencing hearing after the sentence was imposed. Bork claims that the district court abused its discretion by denying her motion for resentencing and that

she is entitled to a new sentencing hearing before a different district court judge. We disagree.

Initially, we note that no statute or court rule provides for an appeal from an order denying a motion for resentencing, and a challenge to the denial of the motion is not properly raised in this direct appeal. *See Castillo v. State*, 106 Nev. 349, 352, 792 P.2d 1133, 1135 (1990) (explaining that the right to appeal is statutory; where no statute or court rule provides for an appeal, no right to appeal exists). Bork never moved to disqualify the district court judge, *see Towbin Dodge, LLC v. Eighth Judicial Dist. Court*, 121 Nev. 251, 260, 112 P.3d 1063, 1069 (2005) ("[I]f new grounds for a judge's disqualification are discovered after the time limits in NRS 1.235(1) have passed, then a party may file a motion to disqualify based on [NCJC Canon 2, Rule 2.11]."), and a challenge to the district court's impartiality is not properly raised in this appeal. Additionally, we are not persuaded that the posting of a link to an article about Bork's sentencing hearing on the district court judge's Facebook page, after the sentence was imposed, indicates bias or impropriety. *See Sonner v. State*, 112 Nev. 1328, 1335, 930 P.2d 707, 712 (1996) (holding that a bare allegation of bias is insufficient to rebut the presumption of impartiality).

ECF No. 20-14 at 4-5. This ruling was not unreasonable.

"A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). And fairness "requires an absence of actual bias in the trial of cases," however, it is "endeavored to prevent even the probability of unfairness." *Id.*; *see also Greenway v. Schriro*, 653 F.3d 790, 806 (9th Cir. 2011) ("A showing of judicial bias requires facts sufficient to create actual impropriety or an appearance of impropriety."). This "most basic tenet of our judicial system helps to ensure both the litigants' and the public's confidence that each case has been adjudicated by a neural and detached arbiter." *Hurles v. Ryan*, 752 F.3d 768, 788 (9th Cir. 2014).

"[T]he floor established by the Due Process Clause clearly requires a . . . judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997); *see also Tumey v. Ohio*, 273 U.S. 510, 523 (1927) (explaining that a defendant is denied due process if the judge "has a direct, personal, substantial

pecuniary interest in reaching a conclusion against him in his case").  And recusal is warranted when "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).  Indeed, "[e]very procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear, and true between the state and the accused denies the latter due process of law." *Tumey*, 273 U.S. at 532.  Therefore, "when a defendant's right to have his case tried by an impartial judge is compromised, there is structural error that requires automatic reversal." *Greenway*, 653 F.3d at 805.

In Bork's motion for resentencing, she argued that "it would be most appropriate for the matter to be transferred for resentencing as a posting to Facebook highlighting an imposition of a maximum sentence could be construed as a possible impropriety under the Judicial Canon rules." ECF No. 20-4 at 5.  Bork asserted that in order "[t]o avoid any appearance of impropriety based upon the link being posted," the case should be reassigned to a new state district court judge for sentencing. *Id.*  However, at the hearing on Bork's motion for resentencing, her trial counsel indicated, "there are not any allegations that were intentional to indicate that there was any misconduct or any concerns about the Court's actions in reference to this." ECF No. 20-6 at 3.

Although it is unclear what the article itself discussed, it cannot be concluded that the state district court judge posting a link to the article to her Facebook page demonstrates "the probability of actual bias." *Withrow*, 421 U.S. at 47.  In fact, the posting did not occur until after Bork's sentencing concluded, and there is no evidence that the state district court judge sentenced Bork to a longer sentence simply to be able to later boast about her ruling by posting about it on her Facebook page in an attempt to fuel her reelection campaign.  Thus, because the

31

Nevada Supreme Court reasonably concluded that the district court judge's actions did not indicate bias or impropriety, Bork is denied federal habeas relief for Ground Six.

### G. Ground Seven

In Ground Seven, Bork argues that the cumulative effect of errors violated her federal constitutional rights. ECF No. 17 at 57. In her appeal of the denial of her state habeas petition, the Nevada Court of Appeals held: "even assuming errors may be cumulated to find unlawful imprisonment, Bork failed to demonstrate any error, so there was nothing to cumulate." ECF No. 21-11 at 6-7. This ruling was reasonable as Bork has failed to demonstrate any errors. Bork is denied federal habeas corpus relief for Ground Seven.[5]

## IV. CERTIFICATE OF APPEALABILITY

This is a final order adverse to Bork. Rule 11 of the Rules Governing Section 2254 Cases requires me to issue or deny a certificate of appealability (COA). Therefore, I have *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). A COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if

---

[5] Bork requested that I conduct an evidentiary hearing "at which proof may be offered concerning the allegations in th[e] amended petition." ECF No. 17 at 58. Bork fails to explain what evidence would be presented at an evidentiary hearing. Additionally, I have already determined that Bork is not entitled to relief, and neither further factual development nor any evidence that may be proffered at an evidentiary hearing would affect my reasons for denying her remaining ground for relief. Accordingly, I deny Bork's request for an evidentiary hearing.

reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.* Applying these standards, I find that a certificate of appealability is unwarranted.

## V. CONCLUSION

I THEREFORE ORDER that the Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254(d) **(ECF No. 17) is DENIED**.

I FURTHER ORDER that Bork is denied a certificate of appealability.

I FURTHER ORDER, under Federal Rule of Civil Procedure 25(d), the Clerk of Court to substitute Dwight Neven for Jo Gentry as the Respondent warden on the docket for this case.

I FURTHER ORDER the Clerk of the Court to enter judgment accordingly.

Dated: February 27, 2020.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE